UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES LEE PALMER, No. 53706-097,

    Petitioner,

v.

WARDEN DANIEL SPROUL,

    Respondent.

Case No. 25-cv-118-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner James Lee Palmer's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 (Doc. 1). The Court has determined that the only cognizable claim Palmer advances is a challenge to the calculation of the Bureau of Prisons ("BOP") that he is entitled to release on August 2 instead of February 2, 2025 (Doc. 5). Respondent Warden Daniel Sproul, of the Federal Correctional Institute at Marion, Illinois ("FCI-Marion"), where Palmer is confined, expedited his response at the Court's request (Doc. 15). Palmer has replied to that response (Doc. 17).

**I.    Background**

In September 2017, Palmer was sentenced in the United States District Court for the Southern District of Iowa to serve 120 months in prison for possession of child pornography. *United States v. Palmer*, No. 1:17-cr-3-RGE-HCA. He is currently incarcerated at FCI-Marion with a projected release date of August 2, 2025. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited April 14, 2025). In support of his request for relief, he attaches a form entitled "Sentence Monitoring Computation Data as of 10-31-2024," which reflects his home detention eligibility date of February 2, 2025, and a projected release date of August 2, 2025 (Doc. 1 at 11-12). He also attaches a June 11, 2024, memo from Warden Sproul stating that his "Good Conduct Time" release date is February 2, 2025 (Doc. 1 at 13). That memo is related to Palmer's

request to Warden Sproul for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as compassionate release.

Warden Sproul asks the Court to dismiss Palmer's petition for failure to exhaust administrative remedies or to deny it on the merits because the BOP has properly calculated Palmer's projected release date.  He notes that Palmer has been in continuous custody since his arrest on January 25, 2017, and has received credit toward his sentence for time he was detained before he was sentenced (223 days) and has received good conduct credit at a rate of 54 days per year for his period of incarceration (540 days).

**II.   Failure to Exhaust**

    A.   <u>Administrative Remedies</u>

When an inmate believes the BOP is computing his sentence incorrectly, he must exhaust his administrative remedies before filing a § 2241 petition.  *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019); *United States v. Dawson*, 545 F. App'x 539, 541-42 (7th Cir. 2013).  Although there is no express exhaustion requirement in § 2241, there is a common-law requirement.  *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004).  The Court may, indeed, require it before it entertains a § 2241 petition.  *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (challenge to sentence computation).

The Administrative Remedy Program of the BOP, along with institution-specific supplements, provides the procedures for exhausting administrative remedies based on an allegedly incorrect release date.  *See* 28 C.F.R. § 542.10-.19.  In its normal course at FCI -Marion, the grievance process involves four steps:

**Step 1:**   The inmate must attempt informal resolution.  28 C.F.R. § 542.13.  At FCI -Marion, this means addressing the issue with the inmate's counselor and completing an informal resolution form, called a BP-8;

**Step 2:**   If informal attempts do not resolve the grievance, the inmate must submit a formal

|  |  |
|---|---|
|  | Administrative Remedy Request on a BP-9 form within 20 calendar days of the event or injury giving rise to the complaint. 28 C.F.R. § 542.14. The Administrative Remedy Request should be answered within 20 days by the Warden. *Id.*; 28 C.F.R. § 542.18; |
| **Step 3:** | If the inmate is not satisfied with the Warden's response to the Administrative Remedy Request, the inmate may appeal the Warden's decision to the appropriate Regional Director using a BP-10 form submitted within 20 calendar days of the Warden's response date. 28 C.F.R. § 542.15. The Regional Director should respond within 30 days, 28 C.F.R. § 542.18; |
| **Step 4:** | If the inmate remains dissatisfied with the Regional Director's response to the appeal, the inmate may appeal once more to the BOP General Counsel using a BP-11 form submitted within 30 calendar days of the Regional Director's response. 28 C.F.R. § 542.15. The General Counsel should respond within 40 days. 28 C.F.R. § 542.18. |

An inmate may construe the absence of a timely response at any level as a denial. 28 C.F.R. § 542.18. An appeal to the General Counsel is the final step in the exhaustion process. 28 C.F.R. § 542.15(a).

>The Court may excuse the failure to exhaust where:
>
>(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).

### B. Parties' Positions

Warden Sproul has submitted evidence that Palmer has never made any request under the Administrative Remedy Program while incarcerated by the BOP. Thus, he argues, Palmer has clearly not begun, much less exhausted, administrative remedies. He also sees no basis for excusing exhaustion.

Palmer does not argue that he exhausted the Administrative Remedy Program. Instead, he argues that he exhausted his administrative remedies for filing a motion for compassionate release

3

under the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)). He claims that by authoring the June 11, 2024, memo stating Palmer's "Good Conduct Time" release date was February 2, 2025, Warden Sproul partially granted Palmer's motion for compassionate release and effectively shortened his sentence by six months.

It was not until Palmer was assigned to a new Unit Team in October 2024 that he found out his release date, including good conduct credit, was August 2, 2025, and that only his eligibility for home confinement was February 2, 2025. He claims Warden Sproul's partial compassionate release evidenced by the June 11, 2024, memo was effectively undone. He urges the Court, if it is inclined to dismiss his petition, to instead construe it as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and/or transfer the motion to a court that has jurisdiction to hear it. Alternatively, he asks the Court to release him to home confinement at his mother's house.

C.   Application

It is clear that Palmer has not exhausted the remedies he had available to him under the Administrative Remedy Program, 28 C.F.R. § 542.10-.19. In fact, he never even commenced the process. It would have been particularly helpful in this kind of case to give the BOP a chance to clarify whether Warden Sproul intended in his June 11, 2024, memo to grant compassionate release to Palmer. In one part, he says Palmer's release date with good conduct credit was February 2, 2025, but in another part he states, "I am recommending disapproval of inmate Palmer's [Reduction In Sentence]/Compassionate Release. . . ." (Doc. 1 at 13). To the extent there is any ambiguity, the administrative review process was an ideal avenue to clear it up.

But Palmer did not use that process. It was available, and if he had begun it when he moved to his new unit at the end of October 2024, at least the first few levels, if not the entire process, might have been completed by February 2, 2025, the date Palmer believes he should have been

4

released. After all, the second step in the process was essentially asking the warden what he intended in his June 11, 2024, memo, and if he intended to reduce his sentence, Palmer could have achieved that with his request for an administrative remedy. And had Palmer promptly started the administrative review process, he surely could have completely exhausted his remedies before August 2, 2025, in time for meaningful, if not ideal, relief if any was due. Palmer has offered no reason exhaustion should be excused in his case. And exhaustion of his remedies under 18 U.S.C. § 3582(c)(1)(A) is not sufficient to exhaust the remedies in the § 2241 context.

Alternatively, Palmer asks the Court to construe his § 2241 as a motion for compassionate release. However, as the Court noted in its January 30, 2025, order (Doc. 5), Palmer should file a motion for compassionate release in his criminal case so that his sentencing judge may make an intelligent decision. Palmer has cited no authority that would allow this Court to consider or to transfer a motion for compassionate release to the sentencing court, so the Court declines to do so.

Finally, Palmer again asks the Court to order the BOP to place him on home confinement. The Court rejected such a request in its January 30, 2025, order (Doc. 5) and, for the same reasons, rejects his renewed request.

The Court must dismiss Palmer's § 2241 petition for failure to exhaust administrative remedies. In light of this disposition, the Court need not consider the merits of Palmers § 2241 sentence computation claim.

### III. Conclusion

For the foregoing reasons, the Court **DISMISSES without prejudice** Palmer's petition in its entirety for failure to exhaust administrative remedies (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

If the petitioner wishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). A motion under

Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $605.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). It is not necessary for the petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**
**DATED:  April 15, 2025**

                                                      s/ J. Phil Gilbert
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**